## In re C. E. WYNN–JOHNSON.

### (First Division. Skagway, June 20, 1902.)

### No. 138.

1. CONSTITUTIONAL LAW—LICENSES.

Sections 460–461 of the Alaska Penal Code (30 Stat. 1336, c. 429), as amended by section 29 of the Political Code, in the act of June 6, 1900, c. 786 (31 Stat. 332), providing for the collection of a tax upon certain designated trades and business conducted within the District of Alaska, are not unconstitutional for conflict with the first clause of section 8, art. 1, of the Constitution of the United States.

2. LICENSES—TERRITORIES.

Congress may provide by legislation for a system of licenses for the support of local government in territories. The act in question is one for the support of local government. ·

3. STATUTES—CONSTRUCTION.

A statute should be given such a construction as will effectuate its purpose, when that is possible, and no statute should be held invalid if it can be so construed, considering all its provisions, as to make it a valid statute.

Habeas corpus to test constitutionality of the license laws of Alaska. Held constitutional, and writ denied.

John G. Heid, for petitioner.

R. A. Friedrich, U. S. Dist. Atty., contra.

BROWN, District Judge. At the Skagway October, 1901, term of the court, one C. E. Wynn-Johnson and the Moore's Wharf Company were jointly indicted, under sections 460 and 461 of the crimes act of the District of Alaska (30 Stat. 1336, c. 429), as amended by Act June 6, 1900, c. 786 (31 Stat. 332), for conducting a wharf without first having obtained a license therefor as required by law. A bench warrant was issued upon said indictment, and the said C. E. Wynn-Johnson taken into custody by the United States marshal and brought into

court. The said Johnson, having failed and refused to give bail as required by law, was retained in the custody of the United States marshal, and while so in custody brought these proceedings in habeas corpus, and prayed to be discharged from custody.

No objection is made to the indictment, either in form or substance, nor to the writ under which the United States marshal holds the said Johnson in custody; but counsel for said Johnson alleges that the statute requiring the payment of this license fee is unconstitutional and void, and that said Johnson should be discharged from custody for that reason. The alleged unconstitutionality of the act of Congress is predicated upon the claim that such statute is in violation of that provision of the Constitution requiring uniformity in the laying and collection of taxes in the District of Alaska; in other words, that it is in violation of the first clause of section 8, art. 1, of the Constitution of the United States, which reads as follows:

"The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts, and excises, shall be uniform throughout the United States."

The acts of Congress providing for customs duties and internal revenue have for years been extended to Alaska by express act of Congress; and all such collections of taxes, and the laws under which they were made, were in force in Alaska at the time the act in question was passed. It will also be remembered that by the acts of Congress the Constitution of the United States and its beneficient provisions have been extended to Alaska, impliedly at least, if not in express terms.

Under the laws of the United States, license taxes of the forum attempted to be enforced in Alaska are not collected in any other part of the United States. On the face of the prop-

osition, it would seem that the question of uniformity of taxation under the Constitution is fairly raised. This question was considered at great length by the Supreme Court of the United States in the case of Downes v. Bidwell, 21 Sup. Ct. 770, 45 L. Ed. 1088, and the other "insular cases," and the arguments on all sides were practically exhausted.

It is a settled theory of the law that the Congress of the United States may create territorial governments in the territory belonging to the United States, under circumstances which seem to Congress sufficient to require such action. It has been the uniform practice of the Congress, in establishing these territorial forms of government, to provide for a system of taxation whereby such government, when established, might be self-sustaining, if not wholly, at least to a very large degree. If Congress has power to authorize a territorial legislature to provide a system of taxation for a territory—and this is unquestioned—surely it could exercise by direct legislation the power that it might delegate to another legislative body. That Congress may provide, by direct legislation, a system of taxation for the support of local government in the territories and districts of the United States, is, we think, practically unquestioned. Whether, then, the question of uniformity of taxation arises under the statutes now under consideration, depends, it would seem, upon the use of the moneys to be collected under this license law. If for the support of local government in the District of Alaska, no question of uniformity can arise; if for general purposes of the United States, and to be covered into the Treasury of the United States for general purposes, then the burdens placed upon the citizens of Alaska are excessive, and not uniform with the taxes levied in other portions of the United States. It therefore becomes necessary, in considering this question, to examine briefly the purposes of Congress in the levy of these license taxes.

Under section 7 of the Political Code for Alaska, passed June 6, 1900, c. 786 (31 Stat. 324), it is provided that the clerk of the court—

"Shall also receive all moneys collected from licenses, fines, forfeitures, or in any other case, except from violations of the customs laws, and shall apply the same to the incidental expenses of the proper division of the District Court, and the allowance thereof as directed by the judge, and shall account for the same in detail and for any balance on account thereof, quarterly, to and under the direction of the Secretary of the Treasury."

It will be observed that, under the terms of this section, the moneys realized from the collection of license taxes are to be disbursed for the expenses of the proper division of the District Court, and the balance of the money, if any, is to be accounted for in a report to the Secretary of the Treasury. Among the items of expense to be paid by the court is the construction of courthouses and jails; the courthouse not to exceed in cost $5,000, and a jail $3,000. It is also provided that one-half of the moneys paid in on these license taxes in incorporated towns shall be paid over to the treasurers of such towns for school and other purposes. It is further provided that one-half the moneys collected outside incorporated towns, and to be turned in to the Treasury of the United States, is to be expended for school purposes under the direction of the Secretary of the Interior.

It will be observed, therefore, that the larger portion of all the moneys collected from license taxes is to be expended for the purpose of local government within the district; but in the tenth section of the same act of Congress (31 Stat. 325), making further provision for a civil government in Alaska, it is provided that:

"Each clerk shall collect all moneys arising from the fees of his office, or on any other account authorized by law to be paid or collected by him * * * and any balance remaining in his hands,

after all payments ordered by the court shall be made, shall be by him covered into the Treasury of the United States, at such times and under such rules and regulations as the Secretary of the Treasury shall prescribe."

Does this language, "covered into the Treasury of the United States," necessarily mean that the money shall go into the Treasury for general purposes, and be paid out upon appropriations made by the Congress of the United States? If this is the necessary construction of the statute, and if there be any such balance to go into the United States Treasury, it would seem that, as to such balance, there was a gathering of taxes contrary to the constitutional·provision of uniformity. It is a fact, about which there can be no dispute, that the expenditures of the general government for local government in the District of Alaska far exceed the moneys collected from license taxes; but the salaries of officers, such as Governor, Secretary, judges, marshals, etc., are paid out of the national Treasury on appropriations made by Congress from moneys in the Treasury of the United States. Such expenditures on appropriations made by Congress, though for the support of local government in Alaska, can hardly be deemed the application of moneys realized from the collection of license taxes within the District of Alaska to the support of local government in said district. But where the language of the statute is "covered into the Treasury of the United States * * * under such rules and regulations as the Secretary of the Treasury may prescribe," such "rules and regulations" might refer to the purpose for which the money was to be paid into the Treasury, and that purpose is its expenditure for local government.

Should we not, therefore, indulge in the presumption that, by the use of the words "covered into the Treasury under rules and regulations prescribed by the Secretary of the Treasury," Congress intended that money should be covered

into the Treasury for lawful purposes, viz., to be expended for local government, rather than for an unlawful purpose, in violating the constitutional provision of uniformity?

It may be said in this connection that statutes should be given such a construction as will effectuate their purpose, where that is possible, and that no statute should be held invalid if it can be so construed, considering all its provisions, as to make it a valid statute; that is, the statute should be given a construction that will make it valid and effectual, if it can be fairly done, rather than a construction that will render it void. The legislative body, in passing upon the statute under consideration, has necessarily passed upon its validity and constitutionality, or it would never have been enacted by Congress or received the signature of the President. Constitutional courts that may properly pass upon the constitutionality of statutes never hold them unconstitutional and void unless no reasonable construction can be given them that will avoid such necessity. This court is a creature of legislation—is not a constitutional court, but a court created by an act of Congress. It would be a strange conclusion, indeed, for the creature of Congress to pronounce void the laws enacted by its creator. Under no circumstances would this court pronounce the act of Congress providing for these licenses unconstitutional and void. It is the opinion of this court that any such action would be a wrongful assumption of power and authority.

Therefore, without discussing the questions involved in the application for a writ of habeas corpus, or the propriety of discharging the said Wynn-Johnson from custody under the claimed unconstitutionality of the license law, the court will refuse to discharge the said Johnson from custody, and will remand him to the custody of the United States marshal, to be held by him for trial on the indictment presented against him, and it is so ordered.